IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | CIVIL ACTION |
| PETER WILLIAM DIGIOVANNI | : | 11-1691 |
|  | : |  |
|  | : | Bky. No. 09-12738 |

**MEMORANDUM**

Ditter, J                                                                                           September 15, 2011

      This case comes before me on a pro se appeal from an order of the bankruptcy court that found a state court's award of counsel fees and costs was a nondischargeable debt. For the reasons that follow, I will affirm.

### I.  BACKGROUND

      Peter William DiGiovanni is an attorney who was appointed executor of the estate of the late Helen J. DiSabato by her last will. As a result, letters testamentary were granted to him on April 3, 2006, by the Orphans Court of Chester County. However, he failed to file tax returns on the estate's behalf or to take the steps necessary to close the administration of the estate despite persistent complaints from its beneficiary, Michele Demko. Mrs. Demko and her husband, appellees in this matter, filed a removal petition in the Court of Common Pleas of Chester County. On September 4, 2007, Mr. DiGiovanni was removed as executor and he was ordered to turn over to the new executors, the Demkos, all records entrusted to him and all estate documents.

      He failed to do so.

      By order dated December 17, 2007, the Common Pleas Court held him in contempt for this failure and ordered that by January 8, 2008, he turn over to the Demkos' attorney all of the

estate documents and records.  In addition, Mr. DiGiovanni was sanctioned and ordered to pay the Demkos' reasonable attorneys' fees.

Because Mr. DiGiovanni again failed to turn over all of the estate records and failed to pay the attorneys' fees, the Demkos filed another petition for contempt.  Mr. DiGiovanni did not oppose the relief requested in the second contempt petition.  On October 9, 2008, the Common Pleas Court held him in contempt and ordered him to pay a total of $29,279.55 to the Demkos for fees, costs, penalties, and expenses.

Shortly thereafter, Mr. DiGiovanni filed a bankruptcy petition under Chapter 7 in what he admitted was an effort to be relieved of the financial sanctions the Common Pleas Court had imposed upon him.  Whether or not the sanctions debt was dischargeable was the matter before the bankruptcy judge, who found the debt nondischargeable and denied Mr. DiGiovanni's motion for reconsideration.  The matter is now before me pursuant to Mr. DiGiovanni's pro se appeal of that finding.[1]

## II   BANKRUPTCY COURT DECISIONS

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity."  11

---

[1] Mr. DiGiovanni states that he is appealing the "final order" of the bankruptcy court and seeks reversal of "the January 5, 2011 Order."  The appellees also address the underlying merits, and not the bankruptcy court's January 20, 2011 order denying Mr. DiGiovanni's motion for reconsideration.  Because a bankruptcy court's order determining a debt to be nondischargeable is a final order and both parties have briefed the merits of that finding, there is no prejudice in my consideration of the opinion of nondischargeability.  *See e.g., Sunflower Racing v. Mid-Continent Racing & Gaming Co.*, 226 B.R. 673, 684-685 (D. Kan. 1998) (electing to "treat[] the appeal of the bankruptcy court's reconsideration order as an appeal of the underlying judgment and order" after finding it permissible for an "appellate court to consider the merits of the underlying order if the appeal is otherwise proper, the intent to appeal from the final judgment is clear, and the opposing party was not misled or prejudiced").

U.S.C. § 523(a)(6).  However, in keeping with the Code's fundamental purpose of giving an honest debtor a fresh start, this exception is construed narrowly, strictly, and liberally in favor of the debtor.  An opposing creditor bears the burden of proving nondischargeability by a preponderance of the evidence.

The Honorable Eric J. Frank of Bankruptcy Court held a hearing, made careful findings, and reached appropriate conclusions of law in determining whether Mr. DiGiovanni's debt to the Demkos was dischargeable or not.  *Estate of DiSabato v. DiGiovanni (In re DiGiovanni),* 446 B.R. 709 (Bankr. E.D. Pa. Jan. 5, 2011).

First, as to the law: Judge Frank pointed out that "willful" and "malicious" have different meanings.  The former not only includes actions taken for the specific purpose of causing injury, but those that have a substantial certainty of doing so.  Thus willful actions do not include debts arising from conduct that recklessly or negligently inflicts injury.  "Malicious" refers to injuries that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.  A debt is nondischargeable only if the debtor's conduct was both willful *and* malicious.  *Id.* at 716.

Judge Frank then considered whether the debtor's conduct was willful:

> The Debtor [Mr. DiGiovanni] had ample notice that he was acting improperly and unprofessionally and had an opportunity to prevent his inaction from snowballing into successive findings that he was in contempt of court orders.  While the Debtor was the Executor of the Estate, the Plaintiffs gave him several opportunities over the course of a year to correct and/or disclose any problems he was having with the Estate administration. Also, on multiple occasions, the Plaintiffs advised him that they needed their files. The e-mails the Plaintiffs sent the Debtor exemplify their frustration resulting from his inattention to their concerns about the Estate administration, as well as their aggravation regarding his unresponsiveness in turning over their files.  The Debtor provided no evidence disputing his receipt of the e-mails.  The evidence suggests that he simply did

> nothing to remedy his deficits despite these very loud warnings. Even after being removed as the Executor, the Debtor continued to ignore the formal notice of his unprofessional conduct that he was given in the form of the CP Court orders. In the September 4, 2007 Order from the CP Court, he was specifically ordered to turn over the Estate documents. Instead, he did nothing . . . .
>
> Based on the sequence of events and the picture as a whole, the Debtor's conduct cannot be characterized as mere negligence. Rather, his inaction was akin to willful blindness . . . [H]e consciously ignored his obligations to the Plaintiffs, knowing full well that his actions would have adverse financial consequences to the Estate.

*Id.* at 719.

Judge Frank then turned to the question of whether the debtor's conduct was malicious. In that regard, he considered the reasons Mr. DiGiovanni offered for failing to obey the Orphan Court's orders: that he could not bring himself to do what he acknowledged were his obligations; that performance would have been psychologically painful; and that he just couldn't get himself to comply. While Judge Frank recognized that Mr. DiGiovanni appeared to be tired, withdrawn, and depressed, he noted that Mr. DiGiovanni had never sought professional help or received treatment for any psychological problem. Judge Frank added there could be no finding that Mr. DiGioanni lacked the requisite scienter to act willfully and maliciously. He concluded, therefore, that Mr. DiGiovanni had offered no justification for what he had done, but only a further description of his wrongful conduct. *Id.* at 720-21.

In summary, Judge Frank stated "the Debtor knew with substantial certainty that his deliberate, ongoing inaction and delay, for which he had no justifiable excuse, would result in adverse financial consequences to the Estate. Therefore, I find that his debt to the Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(6)." *Id.* at 721.

Mr. DiGiovanni timely filed a motion for reconsideration which Judge Frank denied for

failure to persuade the court of a previous manifest error of law, to present any new arguments or to present new evidence. *Estate of DiSabato v. DiGiovanni (In re DiGiovanni)*, 446 B.R. 709, 721 (Bankr. E.D. Pa. Jan. 20, 2011).

### III   DISCUSSION

Mr. DiGiovanni contends that the learned bankruptcy judge considered extraneous facts, made erroneous findings, applied the wrong law, and thereby reached the wrong legal conclusions. He summarizes his contentions in this way: "[T]he Bankruptcy Court cannot declare that the award in the contempt Orders arose out of willful and malicious conduct because Pennsylvania and constitutional law prohibit that construction."

Mr. DiGiovanni asserts that the Bankruptcy Court has disregarded the Constitution in going beyond the state court's findings. He goes on to assert that under Pennsylvania law, only acts that follow an order may be considered contempt of that order, but Judge Frank erroneously considered events that took place prior to the contempt order. He maintains that his only failure to comply with the state court's order was in not turning over one piece of paper and that his insignificant failure cannot be the basis for concluding his conduct was malicious and willful.

Mr. DiGiovanni also faults the state court's order. He points out that where there has been a failure to comply with a court order, Pennsylvania law restricts a court to imposing only a monetary penalty to compensate an injured party or to coerce future compliance. Claims for malpractice, other civil claims, other penalties, contract claims, and general claims for damages are specifically excluded from summary contempt orders issued by a judge in the Court of Common Pleas. In short, he asserts the debt that results from the penalty imposed by the state

court was illegal and therefore should have been declared dischargeable by the Bankruptcy Court.

When the last shell has been stowed and the magazine secured, what we have here is an appeal from the Bankruptcy's Court's refusal to shoot down a sate court's award of sanctions for contemptuous conduct by a lawyer.  Of course, the issue is not so bluntly stated, but as I have pointed out, is brought as a challenge to an ultimate finding of nondischargeability because the conduct was willful and malicious.

There are short answers to all of Mr. DiGiovanni's contentions.  First, in its determinations, the bankruptcy court rightly applied federal law and not state law and did so correctly.  Second, the bankruptcy court did not depend upon the state court's findings and, in any event, did not alter or depart from them.  And finally, the bankruptcy court's findings of fact and conclusions of law were based upon the evidence before him as presented by the parties.

There was  no error.  An appropriate order follows.